# NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 12 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DEVAS MULTIMEDIA PRIVATE LIMITED, <br><br>     Petitioner-Appellee, <br><br> CC/DEVAS (MAURITIUS) LIMITED; et al., <br><br>     Appellees-Intervenors, <br><br>   v. <br><br> ANTRIX CORP. LTD., <br><br>     Respondent-Appellant. | No.   20-36024 <br><br> D.C. No. 2:18-cv-01360-TSZ <br><br> MEMORANDUM* |
| DEVAS MULTIMEDIA PRIVATE LIMITED, <br><br>     Petitioner-Appellant, <br><br> CC/DEVAS (MAURITIUS) LIMITED; et al., <br><br>     Intervenor-Plaintiffs-Appellees, <br><br>   v. | No.   22-35085 <br><br> D.C. No. 2:18-cv-01360-TSZ |

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

ANTRIX CORP. LTD.,

Respondent.

DEVAS MULTIMEDIA PRIVATE
LIMITED,

Petitioner,

and

CC/DEVAS (MAURITIUS) LIMITED; et
al.,

Intervenor-Plaintiffs-
Appellees,

v.

ANTRIX CORP. LTD.,

Respondent-Appellant.

No.   22-35103

D.C. No. 2:18-cv-01360-TSZ

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted March 10, 2026
San Francisco, California

Before:  MILLER and KOH, Circuit Judges, and MOLLOY,[**] District Judge.

Antrix Corp. Ltd. ("Antrix") appeals the district court's order confirming the

---

[**]    The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

arbitral award ("Award") that the International Chamber of Commerce ("ICC") rendered against Antrix in favor of Devas Multimedia Private Ltd. ("Devas") under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"). Antrix and Devas both appeal the district court's order allowing intervening parties to register the district court's judgment confirming the Award in the Eastern District of Virginia. The intervenors are three Mauritian companies that hold shares in Devas—CC/Devas (Mauritius) Ltd., Devas Employees Mauritius Private Ltd., and Telcom Devas Mauritius Ltd. (the "Shareholder Intervenors")—and Devas Multimedia America, Inc. ("DMAI"), a Delaware subsidiary of Devas (collectively, the "Intervenors"). We have jurisdiction under 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291. Because the parties are familiar with the facts, we recite them only as necessary to explain our decision. We affirm in part and reverse and vacate in part.[1]

1.     Confirmation of the Award

The district court did not err in confirming the Award under the New York Convention. The party resisting confirmation of an arbitral award pursuant to the Convention bears a "'substantial' burden of proving one of [the Convention's] seven narrowly interpreted defenses." *Castro v. Tri Marine Fish Co.*, 921 F.3d

---

[1]     The remaining issues in this case are resolved in a concurrently filed opinion.

766, 773 (9th Cir. 2019) (citation omitted). Antrix invokes only one—that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." N.Y. Convention art. V(1)(d). We review the confirmation of the arbitral award *de novo* and the district court's underlying factual findings for clear error. *See Loc. Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 595 (9th Cir. 2018).

Antrix contends that because Article 20 of the agreement between Devas and Antrix ("Agreement") required an *ad hoc* arbitration, an arbitration administered by the ICC was contrary to the Agreement.[2] The text of Article 20 forecloses that argument. Nothing in Article 20 requires *ad hoc* arbitration. Moreover, although Article 20 does not specify who would administer the arbitration, it mandates that arbitrations must be "held in accordance with the rules and procedures of the ICC . . . or UNCITRAL," and the ICC's rules contemplate ICC administration. *See* ICC Rules of Arbitration arts. 1(2), 4(1), 9, 27 (1998) ("1998 ICC Rules") (assigning administration of arbitrations under the Rules to the ICC Court and its Secretariat). Even assuming an arbitration could be conducted *ad hoc* in accordance with ICC procedures, nothing in Article 20 required *ad hoc* arbitration, so Antrix cannot show that the arbitration administered by the ICC was contrary to the Agreement.

---

[2]    *Ad hoc* arbitration is a form of dispute resolution where the parties organize and manage the arbitration process themselves without the administrative oversight of a permanent arbitral institution.

4

To the extent that Antrix suggests that the Agreement was violated because the ICC appointed an arbitrator on Antrix's behalf, this argument is foreclosed by the Agreement and the ICC's rules. Antrix refused to appoint an arbitrator in the ICC arbitration proceedings. Although Article 20 of the Agreement does not specify any procedure for appointing arbitrators when a party refuses to do so, the ICC's rules, which are incorporated by Article 20, provide that the ICC Court will appoint an arbitrator when a party refuses to appoint one. *See* 1998 ICC Rules art. 8(4) ("If a party fails to nominate an arbitrator, the appointment shall be made by the Court."). Therefore, Antrix, as the party resisting enforcement, has not met its "'substantial' burden of proving one of seven narrowly interpreted defenses" to enforcement under the New York Convention. *Tri Marine Fish Co.*, 921 F.3d at 773 (citation omitted).

2.     Registration Order

We have jurisdiction over Devas's and Antrix's appeals of the district court's order ("registration order") granting the Intervenors' motion to register the district court's judgment confirming the Award ("judgment") in the Eastern District of Virginia. The district court's registration order is a final, appealable order because it "govern[s] future interactions between [the parties]" and contemplates no further proceedings on the questions resolved in the registration order. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010).

5

Specifically, the registration order resolved the Intervenors' standing and the existence of good cause to allow Intervenors to register the judgment in the Eastern District of Virginia, leaving nothing further for the district court to decide on those questions.

That the court invited future applications to register the judgment in other districts does not make this registration order nonfinal. Antrix or Devas would be unable to obtain review of the registration order outside of the Western District of Washington because only "the court that entered the judgment" may determine whether there is good cause for registration before an appeal concludes. 28 U.S.C. § 1963. Therefore, if Devas and Antrix were unable to proceed here, "it is unclear that there would be any future opportunity for them to appeal." *Armstrong*, 622 F.3d at 1065. "Accordingly, jurisdiction lies" here. *Id.*

Devas's and Antrix's appeals of the registration order are not moot because meaningful relief is still possible if we were to reverse the registration order. Specifically, if we reversed the registration order, Antrix could move for post-judgment relief under Federal Rules of Civil Procedure 59 and 60 in the Eastern District of Virginia to claw back any amounts already paid to Intervenors, and Devas could seek to register the judgment to garnish the funds that Antrix clawed back. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (holding that a case is not moot where the court cannot "return the parties to the

*status quo ante*" but "can fashion *some* form of meaningful relief"); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019) ("If there is any chance of money changing hands, [the] suit remains live.").

Contrary to Intervenors' argument, Devas has standing to appeal the registration order, because permitting parties other than Devas, the judgment holder, to register and enforce the judgment inflicts an injury fairly traceable to the registration order and redressable by reversal. The registration order differs from the relief Devas sought insofar as the order allowed Intervenors, parties who do not hold the judgment, to control how and when the judgment is enforced. *Cf. Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 182 (2019) (holding that a party that sought individual arbitration had standing to appeal an order compelling class arbitration, because class arbitration was relief in a substantially different format). As the holder of the judgment, Devas has a cognizable interest in post-judgment collection decisions, which can carry different litigation risks, costs, and timing.

We vacate the district court's registration order as to Shareholder Intervenors because they lack standing to register the judgment. Because the Shareholder Intervenors seek to register and enforce the judgment—relief broader than and different from that sought by Devas, the judgment holder—they must independently establish standing. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022). They cannot.

7

A party generally may not rest its claim on the rights of others, and shareholders ordinarily may not assert the claims of the corporation. *See Meland v. Weber*, 2 F.4th 838, 847-48 (9th Cir. 2021) ("In the corporate context, shareholders do not have standing to assert the claims of the corporation, unless they do so through derivative actions." (internal quotation marks and citation omitted)). Whether shareholders of a foreign corporation may assert the corporation's claims is governed by the law of the place of incorporation. *See Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998); *Meland*, 2 F.4th at 848. Indian law governs because Devas is incorporated in India. Indian law does not give the Shareholder Intervenors any right to pursue Devas's claims, and Shareholder Intervenors' right to Devas's residual assets does not vest until Devas is dissolved. *Cf. Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1037 (9th Cir. 2010) (assuming standing for shareholder who was expected to receive assets after the dissolution of company). Because Devas was not dissolved at the time that Shareholder Intervenors sought to register the judgment, Shareholder Intervenors had no standing to bring a direct action to protect their interests in Devas. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,* 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation."). The district court's contrary conclusion that the Shareholder Intervenors have standing is thus reversed, and the registration order is

8

partially vacated as to Shareholder Intervenors.

By contrast, DMAI has a legal right to seek registration of the judgment under its Collection Services Agreement (the "CSA") with Devas. The CSA obligates DMAI to "[t]ake all actions necessary to protect, defend and enforce the Award," which necessarily includes registration. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) ("Pending appeal . . . the judgment is only enforceable in the district in which it was rendered, unless the judgment is 'registered' in another district by court order."). As the district court concluded, "the CSA assigns DMAI a legal right to enforce execution of [the] Judgment for a specific sum of money, namely 30 percent of any collected amounts." DMAI cannot perform its contractual obligation to enforce the Award—including by attaching Antrix's assets in other districts—without first registering the judgment, so the CSA necessarily confers on DMAI the right to seek registration. *Cf. Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008) (holding that assignees of claims for collection had standing to pursue those claims even though assignees had "promised to remit the proceeds of the litigation" to their assignors). The district court's conclusion as to DMAI's standing is affirmed.

Regarding the merits of the registration order, the district court did not abuse its discretion in finding good cause to allow DMAI to register the judgment in the

9

Eastern District of Virginia, where Antrix had identifiable assets, while declining to permit nationwide registration. Good cause to register a judgment in another district is generally shown by the absence of assets in the rendering forum coupled with the presence of assets in the registration forum. *See Columbia Pictures Television*, 259 F.3d at 1197-98. The district court was presented with evidence that Antrix held insufficient assets in the Western District of Washington and that Antrix held identifiable assets in the Eastern District of Virginia. The district court acted within its discretion in registering the judgment in the Eastern District of Virginia while declining to permit nationwide registration absent stronger evidence of Antrix's assets nationwide. Devas's argument that registration offends principles of international comity is not preserved because Devas did not raise it before the district court, and we do not consider it. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (arguments not raised before the district court are generally forfeited).

3.      The Set Aside of the Arbitral Award

Antrix argues that the Indian courts' set aside of the Award renders the Award unenforceable as a matter of law.[3] We decline to resolve that question in the

---

[3]      The High Court of Delhi set aside the Award on August 29, 2022; an appellate panel of the Delhi High Court affirmed the set aside on March 17, 2023; and the Supreme Court of India denied review on October 6, 2023, rendering the set aside final.

first instance. Article V(1)(e) of the New York Convention provides that recognition and enforcement "*may* be refused" when an award "has been set aside." N.Y. Convention art. V(1)(e) (emphasis added). The word "may" is permissive and vests the district court with discretion. *See Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988) ("'May' is a permissive word, and we will construe it to vest discretionary power absent a clear indication from the context that Congress used the word in a mandatory sense."). Whether to decline enforcement of an award that has been set aside requires a fact intensive analysis that the district court is best positioned to undertake in the first instance.

Because the Indian courts finalized the set aside of the Award while this appeal was pending and the question whether intervening foreign proceedings warrant relief from the judgment was not resolved on this appeal, the proper course, as recognized by Devas and Intervenors, is for Antrix to present this argument to the district court.[4] The district court will determine the propriety of any procedural mechanism employed. *See First Beverages, Inc. v. Royal Crown Cola Co.*, 612 F.2d 1164, 1172 (9th Cir. 1980) ("The proper approach to seeking relief from judgment because of a change in the factual circumstances surrounding

---

[4]    We note that Devas also requested that the district court confirm the Award before proceedings in India to set aside the Award were finalized and represented that "[i]f the ultimate decision in India is that the award is somehow rescinded, then [the] money is returned." Dist. Ct. Dkt. 50 at 16.

this case would be to make a Rule 60(b) motion or a motion to reopen to hear additional proof.").

**AFFIRMED in part; REVERSED and VACATED in part.**